**Fernando GASPAR, t/a Fred's Chevron, Plaintiff,**

v.

**CHEVRON OIL COMPANY, a California Corporation, Briarville Corp., a New York Corporation, and John Doe, also known as Philip N. Porcelli, Defendants.**

Civ. A. No. 79–3097.

United States District Court,
D. New Jersey.

June 3, 1980.

Parsonnet, Duggan & Pykon by Albert S. Parsonnet, Newark, N. J., for plaintiff.

Wilentz, Goldman & Spitzer by Marvin J. Brauth, Woodbridge, N. J., for defendants.

## OPINION

SAROKIN, District Judge.

This is an action for damages by a gasoline station operator against Chevron Oil Co. brought under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* (hereinafter referred to as "PMPA"). Plaintiff alleges that Chevron wrongfully concealed and failed to exercise an option to renew its lease with the fee owner, Briarville, and thereby effected an illegal "non-

renewal"[1] of plaintiff's franchise. The issues before the Court are whether an oil company is required to (1) disclose the existence of an option to renew the underlying lease; and (2) exercise said option so as to permit the franchisee to continue in possession of the demised premises.

Chevron moves for summary judgment on the following facts which are not in dispute. In January of 1976, the parties entered into certain lease and gasoline agreements which constituted a franchise as defined in § 2801(1) for a service station located in Cranford, New Jersey. Unlike the typical Chevron franchise term of five years, the term was for a period of four years as a result of the parties' recognition that Chevron's underlying lease would terminate within said four-year period in January of 1980. In October of 1979, more than 90 days prior to the expiration of the underlying lease and the franchise lease, plaintiff received a notification from defendant that his franchise would not be renewed.

Plaintiff, at Chevron's suggestion, had already begun negotiating directly with the owner and expected to enter into a lease directly with said owner and continue operating a franchise at said location with Chevron as a franchisor. However, before the lease was consummated another party acquired the lease from the owner. The plaintiff sought injunctive relief in a state action against the owner, the new tenant, and Chevron. The matter was settled upon plaintiff's payment to the new tenant of the sum of $12,000, and plaintiff thereupon entered into a direct lease with the owner. Plaintiff sought to recover said $12,000 from Chevron and the matter was removed to the Federal court.

■ The party moving for summary judgment must show the absence of a genuine issue of material fact, and, for this purpose, the facts must be viewed in a light most favorable to the opposing party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90

S.Ct. 1598, 26 L.Ed.2d 142 (1970). Plaintiff acknowledges the correctness of defendant's statement of facts, and, therefore, there is no genuine issue of material fact. The gravamen of plaintiff's argument is that the defendant concealed the existence of its option to renew its underlying lease with the owner until September of 1979, thereby depriving plaintiff of the opportunity to obtain an injunction compelling defendant to exercise said option before said right expired.

Chevron's defense, which must be established as an affirmative defense under 15 U.S.C. § 2805(c), is that it acted in compliance with § 2802(b)(2)(C) and § 2802(c)(4). Said sections provide for nonrenewal of the franchise upon:

§ 2802(b)(2)(C)—The occurrence of an event which is relevant to the franchise relationship and as a result of which . . . nonrenewal . . . is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired . . . knowledge of such occurrence—

(1) not more than 120 days prior to the date on which notification of . . . nonrenewal is given . . .

Defendant relies in particular upon § 2802(c)(4)—

loss of the franchisor's right to grant possession of the leased marketing premises through expiration of the underlying lease, if the franchisee was notified in writing, prior to the commencement of the term of the then existing franchise—
(A) of the duration of. the underlying lease, and
(B) of the fact that such underlying lease might expire and not be renewed . . at the end of such term.

■ The Act is the exclusive remedy available to the franchisee, § 2806, and he is generally entitled to injunctive relief and/or damages after proving nonrenewal, unless the franchisor meets the burden of

---

1. Under the PMPA, nonrenewal is defined as "a failure to reinstate, continue, or extend the franchise relationship (A) at the conclusion of the term, or on the expiration date stated in the relevant franchise; . . . 15 U.S.C. 2801(14).

going forward and establishes that nonrenewal was permitted under the Act.

■ Plaintiff's argument that defendant concealed the existence of the option to renew runs contrary to his claim for relief. If plaintiff did *not* know about the option to renew when he entered into the franchise agreement, his only expectation could have been a termination of the franchise upon the expiration of the underlying term. In the absence of any knowledge regarding the existence of an option to renew, defendant notified plaintiff that the franchise would terminate on the very date plaintiff expected it to terminate.

If plaintiff had known about the option at the time he entered into the franchise agreement, he might argue that he relied upon the existence and possible exercise of said option to justify contemplation of a like extension of his franchise agreement. Without such knowledge, no such justification exists.

■ Plaintiff also contends, however, that lack of knowledge regarding the existence of the option deprived him of the opportunity to compel exercise thereof before the option expired. Such argument presupposes that Chevron could have been compelled to exercise the option. Since the Court concludes that Chevron could not have been so compelled, plaintiff's alleged lack of knowledge regarding the existence of the option is immaterial. Defendant had the right not to exercise the option to renew, and in the absence of such renewal, defendant had the right not to renew the franchise agreement.

Congress contemplated and discussed the very issue raised in this matter:

> Among the enumerated events (in § 2802(c)(4) discussed above) is the loss of the franchisor's right to grant continued possession of the premises under certain circumstances. Expiration of the underlying lease could occur under a variety of circumstances including, for example, *a decision by the franchisor not to exercise an option to renew the underlying lease.* However, it is not intended that termination or non-renewal should be permitted based upon the expiration of a lease which does not evidence the existence of an arms length relationship between the parties and as a result of the expiration of which no substantive change of control of the premises results. (Emphasis supplied.)

Sen.Rep. No. 95–297, 95th Cong., 2nd Sess., *reprinted in* (1978) U.S.Code Cong. and Admin.News, pp. 873, 877, 896.

The franchisor could not be compelled to extend the terms of its lease with the landlord if in the defendant's good faith, business judgment such renewal was not in its best interest. There is no suggestion in this matter that defendant was utilizing such circumstances as a subterfuge to terminate plaintiff's franchise. On the contrary, defendant suggested to plaintiff that he negotiate directly with the landlord (Verified complaint, ¶ 6) and defendant, at all times, expressed its willingness to continue the franchise relationship if plaintiff were successful in negotiating a direct lease. As further evidence of such intention, defendant did continue said franchise once plaintiff leased the premises. The relationship continues to date. Therefore, there can be no contention that defendant did not act in good faith in refusing to exercise the option to renew the lease and, in turn, plaintiff's franchise.

Chevron's affirmative defense is satisfied upon compliance with the notice requirements found in three pertinent sections: § 2804(a)—notification of nonrenewal to the franchisee not less than 90 days prior to the date of nonrenewal; § 2802(c)(4)—notification in writing prior to the commencement of the franchise term of the duration of the underlying lease and of the fact that it might not be renewed; and § 2802(b)(2)(C) —acquisition of knowledge by the franchisor of the triggering event not more than 120 days prior to the date of notification of nonrenewal to the franchisee.

■ In light of the fact that the contracts between the parties were entered into prior to the enactment of the PMPA, this Court does not demand strict compli-

ance by the franchisor with each and every such notice requirement. *Sachi v. Mobil,* No. 79 C2345 (E.D.N.Y.1979); *Frisard v. Texaco,* 460 F.Supp. 1094 (E.D.La.1978). The facts, which are not in dispute, establish that plaintiff received notification 90 days prior to nonrenewal and that § 2804(a) was satisfied. Regarding § 2802(c)(4), the parties agree that although the franchise did not contain a provision stating that Chevron's lease was for four years, it did state that the term of the contract was for four years. In respect to the underlying lease, the following appeared:

> Lessor's [Chevron's] interest in the premises is or may be a leasehold estate derived from a third party whose interest in the premises may or may not be of record. This lease is subordinate to all the terms and conditions of any lease now in effect, or hereafter entered into, with such third party evidencing such leasehold estate of Lessor. This lease, at Lessor's option, shall terminate if said lease with such third party is terminated in any manner by either party thereto and Lessor shall in no way be liable to Lessee for such termination, whether voluntary or involuntary.

The defendant relied upon an affidavit of its sales representative in respect to facts surrounding the franchise's shortened term (from the usual five to only four years) as uncontested circumstantial evidence tending to show that plaintiff had been orally notified of the term of Chevron's lease. Plaintiff does not contend that he did not have actual knowledge of the length of the underlying lease. It would have been impossible for Chevron to have anticipated, years before its approval, every requirement of the PMPA. For this reason, the Court deems immaterial any failure of strict compliance with § 2802(c)(4) and excuses the defendant from less than perfect adherence thereto.

The final notice requirement, that of acquisition of knowledge of the triggering event by the franchisor no more than 120 days prior to notification of nonrenewal, § 2802(b)(2)(C), was not intended to be applied to the present circumstances. Its rele-

vance is usurped by the requirement in § 2802(c)(4) of notification of the term of the franchisor's underlying lease and of the fact that the lease might not be renewed. It is apparent upon viewing the other events listed in § 2802(c) that the 120 day outer limit was intended to apply to events such as fraud, bankruptcy, or illness (§ 2802(c)(1)–(3)).

In conclusion, the Court finds that defendant was not under a duty to disclose the existence of any option to renew or exercise it. The underlying lease terminated when plaintiff expected it to terminate. Plaintiff's franchise was not shortened by any act of defendant. Defendant had the right to exercise its own business judgment in respect to the exercise of said option, provided it acted in good faith. There is no evidence that defendant acted in bad faith.

Therefore, defendant's motion for summary judgment is granted, without costs.