George A. VERACKA, Plaintiff,
Appellant,

v.

SHELL OIL COMPANY, Defendant,
Appellee.

No. 80–1849.

United States Court of Appeals,
First Circuit.

Argued May 7, 1981.

Decided July 20, 1981.

Edward A. Sokoloff, Maynard, Mass., with whom Marguerite Seghorn and Sokoloff & Burford, P.C., Maynard, Mass., were on brief, for appellant.

Steven A. Remsberg, Boston, Mass., with whom Herman Snyder and Snyder, Tepper & Berlin, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, GIBSON, Senior Circuit Judge,* and BREYER, Circuit Judge.

BREYER, Circuit Judge.

This case involves Shell Oil Company, an oil company franchisor (the appellee); George Veracka, a gasoline station owner franchisee (the appellant); and Edwin and Helen Gately, who leased to Shell the land which the gasoline station occupies. It raises the question of whether Shell violated the Petroleum Marketing Practices Act (the Act), 15 U.S.C. §§ 2801–2841, when it terminated its lease with the Gatelys and then failed to renew Veracka's franchise. The district court held that it did not, and we agree.

I.

On May 18, 1970, Shell leased the premises that the station occupies from the Gatelys for a primary term of ten years, ending May 31, 1980. The lease provided that:

> If Shell does not have or does not exercise any then-current option to extend, this Lease shall be automatically extended from year to year, on the same covenants and conditions as herein provided, unless and until either Lessor or Shell terminates this Lease at the end of the primary term or the then-current extension period or any subsequent year, by giving the other at least thirty (30) days' notice.

Thus the lease, after May 31, 1980, was self-extending on a year-to-year basis.

---

* Of the Eighth Circuit, sitting by designation.

Shell granted Veracka a sublease for three years beginning June 1, 1970 and entered into a three-year franchise agreement. The sublease and the franchise agreement were both renewed for two more three-year periods. The last sublease and agreement entered into were for the term June 1, 1979 through May 30, 1980.

On April 9, 1979, before the beginning of the final franchise period, Shell wrote Veracka telling him that the underlying lease would expire on May 31, 1980. Shell added:

> This letter is...formal notice to you that Shell's underlying lease might...not be extended or renewed with the result that Shell will not be able to renew your Lease and Dealer Agreement. If Shell should extend or renew its underlying lease, then Shell will expect to renew your Lease and Dealer Agreement....

On May 23, 1979 and again on December 4, 1979, Shell wrote the Gatelys that it had decided against renewal of the base lease after it expired at the end of May 1980. On January 21, 1980, Shell wrote Veracka that it would not renew the sublease and dealer (franchise) agreement. The letter stated:

> The reason for such nonrenewal is the loss of Shell's right to grant possession of the...station premises because of the expiration or other termination of an underlying lease between a third party and Shell covering the said premises.

Veracka then sought an injunction in federal district court, claiming that Shell had violated the Petroleum Marketing Practices Act which states that, with certain exceptions, "no franchisor...of motor fuel ...may...fail to renew any franchise relationship...." 15 U.S.C. § 2802(a)(2). Veracka also claimed a violation of a related state law, Mass.Gen.Laws Am. ch. 93A and ch. 93E. The court granted Veracka's motion for preliminary injunctive relief. After further submissions by both parties, the court decided that Shell's action fell within the Act's exceptions. It vacated its preliminary injunction and entered summary judgment for Shell. Shell then terminated the Gatelys' lease. The Gatelys leased the premises to Concord Oil Company. And Veracka, who has at all times remained in possession of the service station, now buys its gasoline supplies from Concord Oil and sells them as a Gulf-affiliated dealer.

## II.

Appellant's principal claim is that Shell's action does not fit within the Act's relevant exception. That exception is, in the language of the Act, "the occurrence of an event which is relevant to the franchise relationship and as a result of which nonrenewal of the franchise relationship is reasonable", 15 U.S.C. § 2802(b)(2)(C).[1] This broad phrase is more specifically defined, in relevant part, as, among other things, "[a] loss of the franchisor's right to grant possession of the leased marketing premises through expiration of the underlying lease...." 15 U.S.C. § 2802(c)(4).[2] Appel-

---

1. 15 U.S.C. § 2802(b)(2)(C) sets forth the following as a permissible ground for nonrenewal of a franchise relationship:

> The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—
> (i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or
> (ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title.

2. 15 U.S.C. § 2802(c)(4) provides that " 'an event ... as a result of which ... nonrenewal ... is reasonable' " is:

> loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease, if the franchisee was notified in writing, prior to the commencement of the term of the then existing franchise—
> (A) of the duration of the underlying lease, and
> (B) of the fact that such underlying lease might expire and not be renewed during the term of such franchise (in the case of termination) or at the end of such term (in the case of nonrenewal)....

lant argues that this language was meant to apply only to situations in which the loss of a lease was outside the control of the franchisor. In his view, the franchisor may sit by passively and wait for a lease to expire. But, he believes that the language of the exception does not apply when the franchisor takes affirmative steps to stop an otherwise automatic extension of a lease, as was the case in this instance.

■ We do not accept this argument, for it fits neither the Act's language nor its purposes as revealed by its legislative history. The Act itself refers to "expiration" of the lease, without reference to the expiration's cause. Given the practical difficulty in many instances of determining a specific "cause" of a lease's nonrenewal, this general wording is not surprising.

The legislative history of the Marketing Act shows that its basic effort to prevent franchise terminations reflects a recognition of the disparity of bargaining power between franchisor and franchisee and an effort to prevent coercive or unfair franchisor practices. S.Rep.No.95–731, 95th Cong., 2d Sess. 17, 18, *reprinted in* [1978] U.S.Code Cong. & Ad.News 873, 876–77; *Sachi v. Mobile Oil Corp.*, [1980–81] Trade Reg.Rep. (CCH) ¶ 63,044 (E.D.N.Y.1979). But, the exceptions are also broad, reflecting an intent to allow reasonable business judgments by the franchisor. *See* 15 U.S.C. § 2802(b)(3)(A)–(D); 123 Cong.Rec. 10383 (1977) (remarks of Rep. Dingell). Insofar as Congress explicitly considered the type of problem at issue here, its members seemed anxious to prevent a franchisor from taking over a successful station operation and appropriating the benefit of the goodwill that the franchisee had developed. *See* 123 Cong.Rec. 10385 (1977) (remarks of Rep. Conte); *id.* at 10386 (remarks of Rep. Mikva). Thus, there may be instances in which the word "expiration" is not to be taken literally. The Senate Report, for example, states:

> [I]t is not intended that termination or nonrenewal should be permitted based upon the expiration of a lease which does not evidence the existence of an arms length relationship between the parties and as a result of the expiration of which no substantive change in control of the premises results.

S.Rep.No.95–731, 95th Cong., 2d Sess. 38, *reprinted in* [1978] U.S.Code Cong. & Ad. News 873, 896. But, this is not the situation presented here. Shell dealt with the Gatelys at arms length. Its decision not to extend the lease resulted in total loss of Shell's but not Veracka's control. It made no effort to appropriate for itself any goodwill that Veracka had developed. Its actions amount to little more than a decision not to exercise an option to renew a lease—a situation specifically foreseen by the Senate as falling within the language of the exception. Indeed, the Senate Report states:

> Among the enumerated events is the loss of the franchisor's right to grant continued possession of the premises under certain circumstances. Expiration of the underlying lease could occur under a variety of circumstances including, for example, *a decision by the franchisor not to exercise an option to renew the underlying lease.*

S.Rep.No.95–731, 95th Cong., 2d Sess. 38, *reprinted in* [1978] U.S.Code Cong. & Ad. News 873, 896. (Emphasis added). Thus, we believe the district court correctly held that Shell refused to renew the franchise for a reason that the Act allows. *See Sachi v. Mobil Oil Corp.*, [1980–81] Trade Reg. Rep. (CCH) ¶ 63,044 at 77,194–95.

### III.

Appellant also argues that Shell did not give him adequate notice. He states that Shell can use as an excuse "the occurrence of an event ... as a result of which nonrenewal ... is reasonable," only if "the event occurs during the period the franchise is in effect and the franchisor first acquired ... knowledge" of it "not more than 120 days prior to the date on which notification of ... non-renewal is given...." 15 U.S.C.

§ 2802(b)(2)(C)(i).[3] In other words, Shell must notify Veracka within 120 days of the time it learns about the "event"—in this case termination of the base lease. Veracka argues that Shell learned about the termination on May 23, 1979, when it first wrote the Gatelys it would not extend the lease. Veracka points out that Shell did not tell him that his franchise would not be renewed until January 21, 1980, more than 120 days later.

In the district court Shell called attention to the first part of the notice proviso, the clause that speaks of notice having been given about an "event which occurs during the period the franchise is in effect". Shell claims that the May 23 letter did not take place during the *final* franchise period. Shell adds that its second letter to the Gatelys, dated December 4, 1979, was the only event that occurred during Veracka's *final* franchise period, and Shell told Veracka about nonrenewal less than 120 days thereafter.

■ We need not decide this point, however, for we note that of the twelve separate items that the statute defines as comprising "an event . . . as a result of which . . . nonrenewal . . . is reasonable",[4] expiration of the underlying lease (and no other) comes accompanied with its own special notice requirement. "Expiration" counts as an excusing "event" only if the "franchisee was notified in writing, prior to the commencement of the . . . franchise" about the "duration of the underlying lease, and . . . of the fact that . . . [it] might expire . . . at the end" of the franchise term. 15 U.S.C. § 2802(c)(4)(A),(B).[5] We agree with the court in *Gasper v. Chevron Oil Co.*, 490 F.Supp. 971, 975 (D.N.J.1980), that this specific notice requirement is meant to supplant the more general notice requirement applicable to the other eleven exculpatory items. For one thing, the 120 day requirement is well designed to force the franchisor to decide quickly whether such events as franchisee bankruptcy or misconduct justify nonrenewal. It prevents him from terminating a franchise for impermissible reasons while reaching into the distant past for an excuse that the statute allows. Such a rationale simply does not apply when an underlying lease expires. For an-

---

3. *See* note 1, *supra.*

4. 15 U.S.C. § 2802(c)(1)–(3), (5)–(12) provides:

As used in subsection (b)(2)(C) of this section, the term "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as—

(1) fraud or criminal misconduct by the franchisee relevant to the operation of the marketing premises;

(2) declaration of bankruptcy or judicial determination of insolvency of the franchisee;

(3) continuing severe physical or mental disability of the franchisee of at least 3 months duration which renders the franchisee unable to provide for the continued proper operation of the marketing premises;

\* \* \* \* \* \*

(5) condemnation or other taking, in whole or in part, of the marketing premises pursuant to the power of eminent domain;

(6) loss of the franchisor's right to grant the right to use the trademark which is the subject of the franchise, unless such loss was due to trademark abuse, violation of Federal or State law, or other fault or negligence of the franchisor, which such abuse, violation, or other fault or negligence is related to action taken in bad faith by the franchisor;

(7) destruction (other than by the franchisor) of all or a substantial part of the marketing premises;

(8) failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled;

(9) failure by the franchisee to operate the marketing premises for—

(A) 7 consecutive days, or

(B) such lesser period which under the facts and circumstances constitutes an unreasonable period of time;

(10) willful adulteration, mislabeling or misbranding of motor fuels or other trademark violations by the franchisee;

(11) knowing failure of the franchisee to comply with Federal, State, or local laws or regulations relevant to the operation of the marketing premises; and

(12) conviction of the franchisee of any felony involving moral turpitude.

For 15 U.S.C. § 2802(c)(4), see note 2, *supra.*

5. *See* note 2, *supra.*

other thing, the 120 day requirement is not well suited to a base lease termination. To apply the 120 day requirement to the nonrenewal of a base lease would promote, as in this case, a search for a single "nonrenewing occurrence" during the franchise period. Yet, often there will be no such single occurrence and the effort to find one will simply promote unresolvable controversy. For these reasons, because the specific notice requirement is better suited to a lease expiration and because (as the district court found) it seems totally fair to franchisees, we hold that it, not the 120 day requirement, governs. Shell complied with that provision.

### IV.

Finally, appellant argues that the district court wrongly denied his pendent state claim that Shell violated Mass.Gen. Laws Ann. ch. 93E, § 5A. That provision makes it a "violation ... for a supplier ... not [to] renew a marketing agreement of any retail dealer without due cause...." It is clear, however, that state law simply tracks the federal law for present purposes. Congress specifically stated in the Marketing Act that "no State ... may continue in effect any provision of any law ... with respect to ... the nonrenewal ... of any such franchise relationship unless such provision ... is the same as the applicable provision of this subchapter." 15 U.S.C. § 2806(a). And, the Massachusetts Supreme Judicial Court has ruled that in applying this portion of Chapter 93E, "state law must conform to Federal requirements." *Amoco Oil Co. v. Dickson*, 389 N.E.2d 406, 408 n.2 (1979). Thus, an event that constitutes good cause under federal law must also constitute good cause under this similar state statute. *See also Exxon Corp. v. Georgia Ass'n of Petroleum Retailers*, 484 F.Supp. 1008, 1017 (N.D.Ga.1979), *aff'd*, 644 F.2d 1030 (5th Cir. 1981); *Ted's Tire Service, Inc. v. Chevron U.S.A. Inc.*, 470 F.Supp. 163, 164–65 (D.Conn.1979); S.Rep.No.95–731, 95th Cong., 2d Sess. 45, *reprinted in* [1978] U.S.Code Cong. & Ad. News 873, 903. And Shell has therefore complied with the Massachusetts Act.[6]

For these reasons, the judgment of the district court is

*Affirmed.*[7]

---

**6.** In his complaint, appellant alleged that as a result of having violated Chapter 93E, Shell also violated Chapter 93A, Regulation of Business Practices for Commerce Protection. Section 7A of Chapter 93E provides, in part:

The attorney general shall enforce compliance with the provisions of this chapter [93E] in accordance with section [*sic*] 4 to 8, inclusive, of chapter 93A. Any retail dealer shall have the right to damages as provided in sections 9 and 10 of said chapter 93A.

In light of our holding with respect to Chapter 93E, appellant's claim under Chapter 93A must also fail, at least to the extent that it is predicated on the conduct alleged as the basis for the Chapter 93E claim. Insofar as appellant contends that additional activity violated Chapter 93A, he remains free to pursue those claims in state court.

**7.** Appellant also claims that the district court erred when it considered evidence that Veracka's station lost money for Shell. The district court did receive evidence of losses. But this was not error for that evidence was relevant to an alternative justification that Shell offered, namely, compliance with 15 U.S.C. § 2802(b)(-3)(D)(i)(IV), which permits nonrenewal if the franchisor shows that "renewal of the franchise relationship is likely to be uneconomical...." Moreover, the district court held that Shell's loss "might be an independent reason for termination ... but it ... *cannot be so considered* because it was not the reason given in the notice...." (Emphasis added.) Thus, we see no way in which receipt of this evidence could have prejudiced appellant.