**John GRAEBER, individually and trading as Graeber Service Station, Plaintiff,**

v.

**MOBIL OIL CORPORATION, Defendant.**

**Civ. A. No. 85–1616.**

United States District Court, D. New Jersey.

July 18, 1985.

Thomas H. Ward, P.C. by Thomas H. Ward, Woodbury, N.J., for plaintiff.

Crummy, Del Deo, Dolan, Griffinger & Vecchiore, P.C. by Michael D. Loprete, Ann M. Schmidt (on brief), Newark, N.J., for defendant.

## OPINION

COHEN, Senior District Judge:

This wrongful franchise termination action is presently before the Court on motions for summary judgment and counsel fees made on behalf of the defendant, Mobil Oil Corporation (Mobil).

The plaintiff, John Graeber, individually and trading as Graeber Service Station, brought this action in state court[1] to enjoin Mobil from terminating their franchise agreement or, in the alternative, to recover damages for its wrongful termination. On March 29, 1985, plaintiff obtained a temporary restraining order (TRO), in an *ex parte* state court proceeding, prohibiting Mobil's termination for twenty days. *See* New Jersey Court Rule 4:52–1(a). Thereafter, Mobil agreed to continue the restraints of the TRO on a voluntary basis

1. Docket No. C2340–85, Chancery Division of the Superior Court of New Jersey in Gloucester County.

**270**

and did so for at least five additional weeks.[2] During that time, on April 2, 1985, Mobil removed the action to this Court based on our federal question and diversity jurisdiction. *See* 28 U.S.C. §§ 1331 and 1332(a)(1).

On the present motion, Mobil initially sought a declaration dissolving the state court's restraints in addition to an order granting it summary judgment and counsel fees. Plaintiff then filed a cross-motion, seeking a preliminary injunction, effectively, to continue the restraints of the TRO. For reasons which shall soon become apparent, both parties' motions for preliminary, equitable relief have become moot. Thus, we write only in regard to defendant's motion for summary judgment and fees.

Finding that plaintiff's wrongful termination claim, about which there are no genuine issues of material fact, is governed exclusively by the Petroleum Marketing Practices Act (PMPA or the Act), 15 U.S.C. § 2801 *et seq.*, and that it cannot succeed thereunder, we shall grant defendant's summary judgment motion. *See* Fed.R. Civ.P. 56(c). *See also In Re Japanese Electronic Products,* 723 F.2d 238, 257–59 (3d Cir.1983). Finding further that plaintiff's action was not frivolous, we shall deny defendant's request for an award of counsel fees. *See* 15 U.S.C. § 2805(d)(3).

## I. FACTUAL HISTORY

In varying capacities, the plaintiff had been affiliated with Mobil for approximately fifteen years when the parties executed a three year franchise agreement on July 7, 1982. Plaintiff was not represented by counsel at the time. By letter, also dated July 7, 1982 and apparently received shortly thereafter, Mobil advised plaintiff that the franchise, which was to commence on March 1, 1983, would be subject to an underlying lease of the gas station premises between Mobil and one Marie Gonserkevis. The franchise agreement, just executed by the parties, did not include any mention of Ms. Gonserkevis or the actual existence of an underlying lease. Instead, it provided, in abstract terms, that the expiration of a grounds lease would necessitate franchise termination.

Because the underlying premises lease was first executed in 1945 and renewed at five year intervals thereafter and because Mobil's letter of July 7, 1982 referred to the possibility of Mobil "los[ing] its right" to grant possession, *see* Exhibit F attached to the McClintock Affidavit, plaintiff perceived that his franchise would not be terminated unless Mobil was *unable* to renew the underlying lease. Thus, he was unpleasantly surprised when informed, by letter dated November 28, 1984, that Mobil had elected not to renew the underlying lease and that, as a result, his purportedly profitable franchise would be terminated, effective March 31, 1985 (approximately one year before scheduled expiration). Subsequently, plaintiff obtained a lease from Ms. Gonserkevis directly and the ability to trade as a Texaco station. At oral argument, plaintiff conceded that these steps have rendered his preliminary injunction motion moot[3] and, of course, Mobil has withdrawn its motion to dissolve the TRO issued in state court.

## II. DISCUSSION

### A. Preemption

We must first decide what substantive law governs defendant's motion for summary judgment. Plaintiff's central thesis is that Mobil violated an implied contractual covenant to use its best efforts to ensure that their franchise agreement would not be prematurely terminated. He relies principally on the case of *Shell Oil Co. v. Marinello,* 63 N.J. 402, 307 A.2d 598

**2.** On June 6, 1985, Mobil made its last gasoline delivery and on June 10, Mobil removed all of its identification signs.

**3.** Plaintiff's motion for a preliminary injunction was also supported by allegations that the defendant was obligated to alleviate environmental concerns caused by an unsound gas tank. Before oral argument, however, Mobil removed the tank, as well as related environmental concerns, at its own expense.

(1973). Mobil contends that the PMPA, which was enacted after the *Marinello* decision, preempts all other wrongful termination authority with which it is inconsistent. We must agree with the defendant.

In pertinent part, 15 U.S.C. § 2806(a) provides:

> To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, ... no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation ... with respect to termination ... unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

Consistently, courts have construed this section as preempting both statutory and common law in the wrongful franchise termination area. *See, e.g., DiNapoli v. Exxon Corp.*, 549 F.Supp. 449, 455 (D.N.J.1982) (New Jersey Franchise Practices Act preempted); *Meyer v. Amerada Hess Corp.*, 541 F.Supp. 321, 332 (D.N.J.1982) (common law preempted). Thus, to the extent that they are dependent on either state common law or the New Jersey Franchises Practices Act, the counts in plaintiff's complaint, which allege that Mobil wrongfully terminated the subject franchise, must be dismissed.

### B. The Petroleum Marketing Practices Act

We are left to consider plaintiff's claims in the context of those provisions of the PMPA which "establish minimum federal standards governing the termination and nonrenewal of franchise relationships" by franchisors. *See Brungardt v. Amoco Oil Co.*, 530 F.Supp. 744, 745 (D.Kan.1982). The circumstances under which a franchisor may permissibly terminate a franchise are set forth in 15 U.S.C. § 2802(b)(2). Those permitting nonrenewal can be found in 15 U.S.C. § 2802(b)(3).

Congress explicitly provided a good faith requirement in most of the grounds for termination or nonrenewal which necessar-ily involve the exercise of business judgment by a franchisor. Thus, if a franchisor determines to withdraw from the marketing of motor fuel in a particular geographic area, thereby necessitating the termination of a franchise the term of which is three years or longer, it must, *inter alia*, make such a determination "in good faith and in the normal course of business." 15 U.S.C. § 2802(b)(2)(E). Similarly, a determination not to renew a franchise agreement because of the failure of the franchisor and franchisee to agree upon changes in their relationship is only permissible if the changes sought by the franchisor are demanded "in good faith and in the normal course of business" and "not for the purpose of preventing the renewal of the franchise relationship." 15 U.S.C. § 2802(b)(3)(A). Conversely, there are no explicit good faith requirements imposed on franchisors who terminate a franchise for any of the four reasons, described below, provided in § 2802(b)(2)(A) to (D). Instead, Congress attempted to protect franchisees, who typically lack any significant bargaining power, from arbitrary terminations by attaching requirements of recency and adequate notice to the § 2802(b)(2) grounds for termination.

In general terms, § 2802(b)(2) permits a franchisor to terminate a franchise by giving adequate notice, prescribed in § 2802(b)(1), of any of the following: (A) a recent failure of the franchisee to comply with a material and reasonable provision of the franchise agreement; (B) a recent and continuing failure of the franchisee to exert good faith efforts to carry out the provisions of the franchise agreement; (C) the recent occurrence of an event, included or similar to those enumerated in § 2802(c), which renders termination reasonable; or (D) a recent written agreement with the franchisee to terminate (or not renew).

In this case, Mobil seeks to terminate, pursuant to § 2802(b)(2)(C), citing, as the predicate event, its decision not to renew the underlying lease of the service station premises. The text of the relevant paragraphs of § 2802(b) & (c) follows:

(b)(2) grounds for termination of a franchise [include:]

. . . . .

(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—

(i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title,[4]

. . . . .

(c) As used in subsection (b)(2)(C) of this section, the term "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as—

. . . . .

(4) loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease, if the franchisee was notified in writing, prior to the commencement of the term of the then existing franchise—

(A) of the duration of the underlying lease, and

(B) of the fact that such underlying lease might expire and not be renewed during the term of such franchise (in the case of termination) or at the end of such term (in the case of nonrenewal);

When compared with the other enumerated events which make franchise termination permissible,[5] it is obvious that only subsection (4), quoted above, contains its own notice requirements. For the reasons provided below, it is similarly clear that the notice requirement contained in § 2802(c)(4)(A) obviates the need for the recency requirement found in § 2802(b)(2)(C)(i). *See Veracka v. Shell Oil Co.*, 655 F.2d 445, 449 (1st Cir.1981) (deeming the § 2802(b)(2)(C)(i) requirement to be an unnecessary notice requirement); *Gaspar v. Chevron Oil Co.*, 490 F.Supp. 971, 975 (D.N.J.1980) (same).

Elaborating upon the four permissible grounds for termination found in

---

**4.** Mobil has not argued that it is entitled to give notice pursuant to § 2804(b)(1), which permits less than the 90 days notice required by § 2804(a).

**5.** The other enumerated events contained in § 2802(c), which make termination reasonable are:

(1) fraud or criminal misconduct by the franchisee relevant to the operation of the marketing premises;

(2) declaration of bankruptcy or judicial determination of insolvency of the franchisee;

(3) continuing severe physical or mental disability of the franchisee of at least 3 months duration which renders the franchisee unable to provide for the continued proper operation of the marketing premises;

. . . . .

(5) condemnation or other taking, in whole or in part, of the marketing premises pursuant to the power of eminent domain;

(6) loss of the franchisor's right to grant the right to use the trademark which is the subject of the franchise, unless such loss was due to trademark abuse, violation of Federal or State law, or other fault or negligence of the franchisor, which such abuse, violation, or other fault or negligence is related to action taken in bad faith by the franchisor;

(7) destruction (other than by the franchisor) of all or a substantial part of the marketing premises;

(8) failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled;

(9) failure by the franchisee to operate the marketing premises for—

(A) 7 consecutive days, or

(B) such lesser period which under the facts and circumstances constitutes an unreasonable period of time;

(10) willful adulteration, mislabeling or misbranding of motor fuels or other trademark violations by the franchisee;

(11) knowing failure of the franchisee to comply with Federal, State, or local laws or regulations relevant to the operation of the marketing premises; and

(12) conviction of the franchisee of any felony involving moral turpitude.

§ 2802(b)(2)(A) through (D), the Senate Report described the rationale of the § 2802(b)(2) time limitations (recency requirements) as follows:

Specific conditions are attached to each of these grounds, including time limitations which are imposed to preclude a franchisor from basing termination or non-renewal upon old and long forgotten events. The time limitations are designed to provide adequate opportunity for a franchisor to evaluate a potential grounds [sic] for franchise termination whether to terminate the franchise or not to renew the franchise relationship.

S.Rep. No. 731, 95th Cong. 2d Sess. 33 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 892 [hereinafter cited as S.Rep. No. 95–731]. Thus, the recency requirements protect franchisees, by preventing franchisors from "reaching into the distant past for [a termination] excuse that the statute allows" *Veracka,* 655 F.2d at 449, as well as franchisors, by affording them an adequate opportunity for deliberation. Conversely, the notice requirements of § 2804 are more singularly intended for the benefit of franchisees. *See* S.Rep. No. 95–731 at 40.

Undoubtedly, Congress intended that franchisors would ordinarily have to fulfill both the recency and notice requirements. *See* 15 U.S.C. § 2802(b)(1). Typically, the two requirements work well together. For example, if a franchisee willfully adulterates gasoline, the franchisor must decide within 120 days of the time it first acquired knowledge of the adulteration whether to terminate the franchise relationship. *See*

15 U.S.C. §§ 2802(b)(2)(C)(i) and (c)(10). If it so decides, a franchisee must receive at least ninety days notice of the termination decision. 15 U.S.C. § 2804(a).

■ This case demonstrates that the recency requirement merely becomes a redundant notice requirement when termination is justified by reference to the expiration of an underlying lease. Section 2802(c)(4) requires a franchisor to notify a franchisee of the existence of an underlying lease and § 2804(a)(1) requires notification of termination due to the expiration of the same. Obviously, a franchisor does not "learn" of its *own* decision not to renew an underlying lease in the manner that it might acquire knowledge of the other events enumerated in § 2802(c). Although the recency requirement could be applied in this context, the result would be to require a franchisor to inform a franchisee of its decision not to renew an underlying lease within 120 days after it made that decision. This would be inconsistent with § 2804(a) in which Congress has explicitly prescribed a minimum termination notification period of ninety days.[6] In order to apply the more specifically applicable provision and because the underlying rationale of § 2802(b)(2)(C)(i), to prevent termination by reference to otherwise forgotten events, would not be advanced by its application here, we hold that, in order to satisfy the PMPA, Mobil need have notified the plaintiff, in timely fashion, only of the existence of an underlying lease and of the effect of its decision not to renew the same (*i.e.,* franchise termination).[7] Thus, we shall

6. Moreover, if all three statutory provisions were enforced, a franchisor would be required to reveal each of the following at the indicated time: (1) the existence and potential effect of an underlying lease, before the commencement of the franchise term (pursuant to § 2802(c)(4)); (2) its decision not to renew the underlying lease, within 120 days after it was made (pursuant to § 2802(b)(2)(C)(i); and (3) the result of its decision (*i.e.,* franchise termination), at least ninety days before the termination became effective (pursuant to § 2804(a)). Clearly, it would be pointless to require notification pursuant to both § 2804(a) and § 2802(b)(2)(C)(i).

7. Notwithstanding the protestations of plaintiff, it is clear that Congress intended to include "a decision by the franchisor not to exercise an option to renew the underlying lease" within the ambit of § 2802(c)(4). *See, e.g., Veracka,* 655 F.2d at 448 (quoting S.Rep. at 38). Moreover, Congress has not indicated that a franchisee should be specifically informed that a franchisor may *lose the right* to grant possession by *electing* not to renew an underlying lease. While this proposition comports with principles of property law, it likely surprises a great many service station operators. As we read 15 U.S.C. §§ 2802(c)(4) and 2804(a), however, their surprise, even if reasonable, is irrelevant to the

only require strict compliance, *see, e.g., Escobar v. Mobil Oil Corp.*, 678 F.2d 398, 400 (2d Cir.1982), with the criteria of §§ 2802(c)(4) and 2804(a).

### C. The Adequacy of Mobil's Notification of an Underlying Lease

■ Section 2802(c)(4) requires a franchisor to notify a franchisee "[1] in writing, [2] prior to the commencement of the term of the then existing franchise—[3] of the duration of the underlying lease, and [4] of the fact that such underlying lease might expire and not be renewed during the term of such franchise.…" On July 7, 1982, Mobil sent a two paragraph letter to the plaintiff. Because the franchise agreement was executed on the same day and the term of the franchise did not commence until March 1, 1983, this letter was received "prior to the commencement of the term of the then existing franchise." It read as follows:

> Please be advised that the premises which Mobil Oil Corporation proposes to lease to you is subject to an underlying lease to Mobil dated November 6, 1945. The term of the underlying lease commenced April 1, 1980 and is scheduled to expire on March 31, 1985.
>
> The above described underlying lease will expire and may not be renewed during the term of your franchise agreement. In such event, Mobil would lose its right to grant possession of the lease premises to you and accordingly, be required to terminate its agreement and its relationship with you.

*See* Exhibit F of the McClintock Affidavit. Although the letter's second paragraph succinctly advises plaintiff of the possibility of termination, its first paragraph is no model of clarity. Our inquiry, however, is a limited one. At this point, we need only determine whether the first paragraph advises plaintiff of the duration of the underlying lease.[8] Notwithstanding its needless mention of the 1945 commencement date, we find that it did so advise. Thus, defendant

gave plaintiff adequate notice, pursuant to § 2802(c)(4), of the existence and potential impact of an underlying grounds lease.

### D. Good Faith and Best Efforts

■ Before considering whether Mobil gave adequate notice of its decision to terminate, plaintiff maintains that we must decide whether Mobil acted in bad faith by leading the plaintiff to believe that it would use its best efforts to renew the underlying lease.

Mobil first leased the service station premises, for a period of five years, from Ms. Gonserkevis in 1945. The lease was subsequently renewed seven times, each for periods of five additional years. Plaintiff was aware of these renewals but has not presented any specific facts to support his contention that he was led to believe Mobil would renew the lease for an eighth time. Additionally, plaintiff has not suggested that any retaliatory motive led to Mobil's decision not to renew the underlying lease. Essentially, plaintiff's contention, which we must accept as true, is that he reasonably inferred that Mobil would use its best efforts to avoid franchise termination, due to the expiration of an underlying lease, for three reasons: Mobil had repeatedly renewed the lease before, Mobil advised him only of the possibility that it might *lose* possession, and Mobil agreed to permit him to operate his service station until one year after the lease was scheduled to expire. We hold that this claim cannot succeed under the PMPA. Plaintiff's reasonable expectation has not engendered a legally enforceable right. Specifically, we hold that the PMPA does not obligate a franchisor to advise a franchisee that it can permissibly terminate their franchise agreement by electing not to renew an underlying lease or to use its best efforts to renew an underlying lease, even if, at the time of its execution, the term of the franchise agreement exceeds the remaining term of the applicable underlying lease. Our reasons follow.

question of whether a termination was wrongful.

**8.** It is clear that Mobil's letter of July 7 adequately fulfills the other § 2802(c)(4) criteria.

At least four courts have suggested, in dicta, that a franchisor may not fail to renew an underlying lease in bad faith. *See Rogue Valley Stations, Inc. v. Birk Oil Co.*, 568 F.Supp. 337, 347–48 n. 6 (D.Or. 1983) (collecting cases). None, however, has been obligated to delineate the contours of this pronouncement because none has actually been confronted with improper franchisor motive. Other courts have found that § 2802(c)(4) simply does not contain a good faith requirement. *See, e.g., Ohandjanian v. Mobil Oil Corp.*, 1984 Bus. Franchise Rep. (CCH) ¶ 8249 (C.D.Cal. 1984). Our holding does not extend to the question of bad faith because none has been alleged. Nevertheless, we have been asked to decide whether a franchisor is obligated to be candid about the likelihood of franchise termination *vis-a-vis* its intention to renew an underlying lease. Thus, we begin our inquiry by considering the circumstances under which the PMPA requires a franchisor to act reasonably or in good faith.

The Act contains an explicit requirement of good faith in a number of its franchise termination or nonrenewal justifications. *See* 15 U.S.C. §§ 2802(b)(2)(E) and (b)(3)(A) & (D). We cannot ignore its exclusion of the same in § 2802(c)(4). Although § 2802(b)(2)(C) requires predicate events to render franchise termination "reasonable," § 2802(c)(4) *defines* the expiration of an underlying lease as one of the events which makes the termination of a franchise "reasonable." Moreover, the legislative history of § 2802(c)(4) makes it clear that a franchisor's election not to renew an underlying lease may permissibly result in its expiration. *See* S.Rep. 95–731 at 38. In fact, the Act's legislative history only cautions that franchise termination should:

> not be permitted based upon the expiration of a[n underlying] lease which does not evidence the existence of an arms length relationship between the parties [to the lease] and as a result of the expiration of which no substantive change in control of the premises results.

*Id.* Thus, Congress' concern, in this regard, seems only to extend to a confirma-tion that a franchisor, which seeks to terminate because of an underlying lease, is a bona fide lessee and not someone who creates a fictitious leasehold in order to be able to exploit § 2802(c)(4). One exception, regarding a franchisor's attempt to frustrate a franchisee's state created right to *assign* the franchise is noted but is also, of course, irrelevant to our present decision. *See id.* at 43.

The Act does not explicate nor imply any other restraints on a franchisor's ability to terminate pursuant to § 2802(c)(4).

There is no question, in this case, about Mobil's bona fide lessee status. Clearly, a substantive change in the control of the premises would have resulted had not the plaintiff arranged to rent from Ms. Gonserkevis directly. Thus, the PMPA presents no equitable or fairness obstacles to the defendant's motion for summary judgment.

### E. The Adequacy of Mobil's Termination Notice

■ Plaintiff's final and most strenuously asserted argument is that Mobil's notice of termination was defective. It is uncontested that the notice was written, posted by certified mail, and received more than ninety days before it became effective. *See* § 2804(a)(2), (c)(1) & (c)(2). Plaintiff has, however, been able to argue colorably that the notice did not fulfill the informational criteria set out in § 2804(c)(3). These require that every termination notice must contain:

> (A) a statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor;
>
> (B) the date on which such termination or nonrenewal takes effect; and
>
> (C) the summary statement prepared under subsection (d) of this section [by the Secretary of Energy].

In relevant part, Mobil's letter reads:

> The expriation [sic] of Mobil's underlying lease also provide [sic] grounds for the nonrenewal [sic] of our franchise relationship under the Petroleum Marketing

Practices Act. Pursuant to 15 U.S.C. Sec. 2802(b)(3) [sic], Mobil elects to and hereby terminates said franchise relationship with you effective March 31, 1985.

*See* Exhibit G of the McClintock Affidavit. Clearly, Mobil's clumsy expression fulfilled the second and third criteria of § 2804(c)(3).[9] Its subparagraph (A) compliance is not, however, self-evident.

Mobil advised of *nonrenewal* when it meant to advise of *termination.* Accordingly, Mobil cited § 2802(b)(3) when it should have cited § 2802(b)(2)(C) and (c)(4). Mobil's expression was similarly confused in the paragraph which preceded the one quoted above. There, Mobil reminded the plaintiff that loss of its underlying lease provided grounds for *termination, see* paragraph 14(B)(h) of the Retail Dealer Contract (RDC) attached as Exhibit E to the McClintock Affidavit, but concluded: "Accordingly, Mobil elects to and hereby *nonrenews* its Retail Dealer Contract and Service Station Lease with you effective March 31, 1985." Exhibit G of the McClintock Affidavit (emphasis supplied). The PMPA distinguishes clearly between the termination and the nonrenewal of a franchise agreement. *See* 15 U.S.C. § 2802(b)(2) & (b)(3). Paragraph 14 of the RDC between Mobil and the plaintiff does so as well. Mobil's notice of termination does not.

In enacting the PMPA, Congress set out to provide franchisees with "meaningful protections from arbitrary or discriminatory terminations." S.Rep. 95–731 at 18. Nevertheless, "Congress chose to allow a franchisor to terminate a franchise when an underlying lease expires without making a further showing that the decision was made in good faith or in the exercise of reasonable business judgment." *Ohandjanian v. Mobil Oil Corp.*, 1984 Bus. Franchise Rep. (CCH) ¶ 8249 at 14,799 (C.D.Cal. 1984). Section 2802(c)(4) and its legislative history effectively define termination, due to an election not to renew an underlying lease, to be reasonable. The rule that unambiguous statutory language is ordinarily conclusive is an important corollary to the establishment of Congress as the law making body and the judiciary as the law interpreting body. Thus, we may not ask Mobil to justify its decision not to renew its underlying lease or to provide notification not required by statute. We can only determine whether it adequately noticed the plaintiff of the existence of an underlying lease and of the expiration of the same.

Mobil's termination notice confused the termination and nonrenewal decisions as well as the associated statutory citations. Thus, plaintiff did not complain frivolously of deficient notice. Nevertheless, the termination notice contained all of the necessary information and its import was certainly not lost on the plaintiff, as his subsequent actions demonstrate. *Cf. Davy v. Murphy Oil Corp.*, 488 F.Supp. 1013, 1016 (W.D.Mich.1980) (franchisor's intention to terminate was not clearly expressed). Plaintiff knew when and why his franchise agreement would terminate. We shall not construe § 2802(c) in an unreasonably rigid fashion in order to compensate for our inability to append subparagraphs (b)(2)(C) and (c)(4) of § 2802.

### III. CONCLUSION

Congress has required a showing of a franchisor's good faith when unfavorable business conditions result in the termination or nonrenewal of a franchise. 15 U.S.C. §§ 2802(b)(2)(E) & (b)(3). Congress has instructed courts to "carefully scrutinize" termination justifications proffered as reasonable, pursuant to § 2802(b)(2)(C), but not enumerated in § 2802(c). S.Rep. 95–731 at 38. Yet, Congress has determined that a franchisor may prematurely terminate a franchise agreement, without liability, by electing not to renew an underlying premises lease if it merely provides timely notice of the existence and expira-

---

**9.** Mobil's letter noted the effective date of termination and, pursuant to § 2804(c)(3)(C), the required PMPA summary statement was enclosed.

tion date of the same.[10] In this case, Mobil's notices were adequate.

■ Accordingly, we hold that Mobil permissibly terminated the subject franchise and shall issue an order granting Mobil's motion for summary judgment. We shall deny Mobil's request for counsel fees because plaintiff's challenge to the adequacy of its termination notice was not frivolous.

---

**10.** In the context of this case, Mobil's counsel states the proposition succinctly: "Mobil was not required to exercise good faith in its termi-nation of plaintiff's franchise, any possible fact question regarding good faith is irrelevant...." Defendant's Reply Brief at 11.