Antonio **RIVERA**, et al., Plaintiffs,

v.

**CARIBBEAN PETROLEUM CORPORATION,**
Defendant.

**Civil No. 08–1087 (JAF).**

United States District Court,
D. Puerto Rico.

Oct. 19, 2009.

Edelmiro Antonio Salas–Gonzalez, Urb. Villa Nevarez, San Juan, PR, for Plaintiffs.

Eileen Landron–Guardiola, Judith Torres–De Jesus, Landron & Vera LLP, Guaynabo, PR, for Defendant.

## OPINION AND ORDER

JOSÉ ANTONIO FUSTÉ, Chief Judge.

Plaintiffs, Antonio Rivera, Marta Garatón, and the conjugal partnership between them, bring this action against Defendant, Caribbean Petroleum Corporation, alleging violations of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–2841. (Docket Nos. 1; 2–3.) Defendant moves for summary judgment under Federal Rule of Civil Procedure 56(c) (Docket No. 21); Plaintiffs oppose. (Docket No. 32.)

### I.

### Factual and Procedural Synopsis

We derive the following facts from the parties' motions, statements of uncontested material facts, and exhibits. (Docket

Nos. 21; 22; 23; 31; 32.) Plaintiffs are a husband and wife who operate gasoline stations in Puerto Rico. Rivera has been working in the industry for over thirty years as a franchisee for various petroleum companies. (Docket No. 22–2.) Defendant is a petroleum corporation with its principal place of business in Bayamón, Puerto Rico. Defendant markets petroleum under the "GULF" trademark and acts as a franchisor. In 1998, Defendant entered into a fifteen-year lease with Canóvanas Urban Development, Inc. ("CUDI") for a plot of land in Canóvanas, Puerto Rico. As a condition of the lease, Defendant agreed to construct a gasoline service station on the property. (Docket No. 22–5.) The lease established a graduated rental scheme whereby Defendant would pay CUDI $10,0000 per month for the first five years, $12,000 per month in the succeeding five years, and $14,000 in the final five years. (*Id.*)

Defendant built the gas station as promised and then sublet the station to a franchisee under a trial franchise agreement at a rent of $6,000 per month. (Docket No. 22–5 at 4.) That franchisee did not perform satisfactorily and, in 2000, Defendant began looking for another franchisee to operate the station.

In October 2000, Defendant offered Plaintiffs the opportunity to run the Canóvanas gas station rent-free. (Docket No. 22–5 at 4.) Defendant concedes that it entered into an oral franchise agreement, as defined by the PMPA, with Plaintiffs. (Docket No. 23 at 9.) Plaintiffs agree that an oral contract governed their franchise relationship. (Docket No. 22–3 at 55–56.) Plaintiffs took possession of the Canóvanas gas station in October 2000 and have continued to run the station through the present day.

Defendant insists that it had been trying to renegotiate its rental payments under its lease with CUDI since 2003. In 2006, having recently completed a bankruptcy reorganization, Defendant decided that the rental payments for the Canóvanas station were unsustainable. Defendant made its last rental payment in January 2006 and, in the words of its supervisor of retail sales, "still hoped that CUDI would then reconsider and lower the monthly payments." (Docket No. 22–5 at 6.) Instead, CUDI began eviction proceedings on April 20, 2006. (Docket No. 22–5 at 3.) Defendant consented to a judgment of eviction on May 24, 2006. (Docket No. 22–6 at 9.) On the following day, Defendant notified Plaintiffs by mail of the loss of the lease and gave Plaintiffs thirty days to vacate the property. (Docket No. 22–7.)

Plaintiffs, however, remained on the property and eventually purchased it from CUDI. On June 25, 2007, Plaintiffs filed a claim in the Commonwealth Court of First Instance alleging wrongful termination of the franchise under the PMPA. (Docket No. 2–3.) Defendant removed the case to this court on January 18, 2008. (Docket No. 1.)

## II.

### *Summary Judgment under Rule 56(c)*

We grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. DOJ*, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine issue as to any material fact. *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating a motion for summary judgment, we view the record in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must 'produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue.' " *Clifford v. Barnhart,* 449 F.3d 276, 280 (1st Cir. 2006) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir.1999)). The non-movant "may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

## III.

### *Analysis*

Plaintiffs argue that Defendant's eviction for nonpayment of rent cannot be a valid lease "expiration" as contemplated by the statute. (Docket No. 32 at 10.) Plaintiffs also aver that Defendant did not comply with provisions of the PMPA requiring it to include in the termination notice offers to assign any purchase option for the underlying land or rights to equipment and improvements on the land. (Docket No. 2–3 at 15.) Defendant argues that its termination of Plaintiffs' franchise was valid under the PMPA because its eviction by CUDI was an "expiration of the underlying lease" for which termination would be reasonable pursuant to 15 U.S.C. § 2802(c)(4). (Docket No. 23 at 15–19.) With regard to the assignment offers, Defendant first argues that its notice of termination was valid because the PMPA does not require assignment offers to be contained within the termination notice. (Docket No. 23 at 20.) Second, Defendant

argues that it had no purchase option for the land and that it never received a request from Plaintiffs, as mandated by the PMPA, for the assignment of improvements and equipment on the land. (*Id.*)

### A. *Eviction as "expiration"*

■ The issue before us appears to be one of first impression in this circuit: whether a franchisor's eviction for nonpayment of rent qualifies as a "loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease." 15 U.S.C. § 2802(c)(4). The PMPA prohibits the termination of a petroleum franchise agreement unless said termination is premised upon one of five enumerated reasons. § 2802(a), (b)(2). One of these reasons is the "occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise relationship ... is reasonable." § 2802(b)(2)(c). The PMPA then offers a list of situations that qualify as such events "relevant to the franchise relationship." § 2802(c). Any termination that conforms to one of these situations is "conclusively presumed to be reasonable as a matter of law." *Desfosses v. Wallace Energy, Inc.,* 836 F.2d 22, 26 (1st Cir.1987). But the First Circuit, citing the legislative history of the PMPA, cautions that this list is not exclusive; rather, the PMPA allows courts to uphold franchise terminations that do not perfectly conform to an event enumerated in § 2802 yet are nonetheless reasonable. *Id.* at 27.

Section 2802(c)(4) sanctions termination of a petroleum franchise where the franchisor has lost "the right to grant possession of the leased marketing premises through expiration of an underlying lease." The First Circuit broadly interprets the term "expiration" to encompass losses of the lease that are voluntary or involuntary.

*Veracka v. Shell Oil Co.,* 655 F.2d 445, 447–48 (1st Cir.1981). In *Veracka,* the First Circuit rejected the argument that § 2802(c)(4) applied only where the expiration of the underlying lease was outside of the franchisor's control. *Id.* The *Veracka* court analyzed the legislative history and found that while the purpose of the PMPA was to correct a disparity in bargaining power between franchisors and franchisees, "the exceptions are also broad, reflecting an intent to allow reasonable business judgments by the franchisor." *Id.; accord Desfosses,* 836 F.2d at 25("Congress was also aware of the franchisors' need for adequate flexibility to respond to changing market conditions and consumer preferences"). The *Veracka* court found that Congress' chief concern was with a franchisor terminating the franchise relationship solely to take control of the franchise itself, "appropriating the benefit of the goodwill that the franchisee had developed." 655 F.2d at 449. Thus, the First Circuit held that the voluntary loss of a lease was an "expiration" under § 2802(c)(4) where there was an arm's length relationship between lessee and lessor and where there was a substantive change in control of the premises. *Id.*

The *Veracka* decision has influenced the interpretation of "expiration" under § 2802(c)(4) in several other circuits. *See Mustang Mktg., Inc. v. Chevron Prod. Co.,* 406 F.3d 600, 608 (9th Cir.2005) (rejecting literal interpretation of "expiration of the underlying lease" and instead scrutinizing "franchisor's subjective intent, its continuing control over the marketing premises, and its actual or eventual right to continued possession"); *PDV Midwest Refining, L.L.C. v. Armada Oil & Gas Co.,* 305 F.3d 498 (6th Cir.2002) (holding that voluntary loss of a lease is reasonable grounds for terminating a franchise agreement); *Hutchens v. Eli Roberts Oil Co.,* 838 F.2d 1138, 1142 (11th Cir.1988) (voluntary cancellation of an underlying lease in mid-term was an "expiration" under § 2802(c)(4) because "the cause of the lease's termination is not important.... Rather, we must be satisfied that the termination represents an arms length transaction in which the franchisor actually gives up control of the premises."); *Russo v. Texaco, Inc.,* 808 F.2d 221 (2d Cir.1986) (applying the *Veracka* court's "voluntary loss" of an underlying lease to the PMPA's "loss" of franchisor's right to grant the use of a trademark under § 2802(c)(6)).

Plaintiffs' primary argument is that an eviction for non-payment of rent is not an "expiration of the underlying lease" for purposes of § 2802(c)(4). (Docket No. 32.) We are unaware of any precedent in the First Circuit addressing whether a franchisor's eviction is an appropriate "loss of the right to grant possession" under § 2802(c)(4). Following *Veracka* and its progeny, we find no error in a "voluntary loss" where there was an arm's length relationship between the parties to the lease and where the franchisor truly ceded control of the premises. That Defendant was evicted because it stopped paying rent does not affect our analysis. Neither the PMPA nor the cases interpreting it places any importance on the actual cause of the underlying lease's expiration. Instead, just as in *Veracka,* we evaluate the nature of the lessor and lessee's relationship and the franchisor's intent in terminating the franchise. 655 F.2d at 449. In the case before us, there is no evidence that the relationship between Defendant and CUDI was anything but at arm's length. This was not a situation in which the franchisor lost the lease only to be rid of the franchisee and take the property for itself. In fact, Plaintiffs never left the premises and eventually bought the property from the lessor, CUDI.

Furthermore, Defendant's strategic breach of its lease with CUDI was the sort of reasonable business decision that could justify a franchise termination under the PMPA. *See Veracka,* 655 F.2d at 448; *Desfosses,* 836 F.2d at 25. Defendant, having recently emerged from bankruptcy, was paying an exorbitant rent on a property for which it received no monthly rent from the franchisee. Rivera even concedes that Defendant had "a very bad deal . . . . [b]ecause that was an exaggerated amount of rent." (Docket No. 22–3 at 4.) In such a situation, it may be more reasonable for Defendant to breach the lease and risk liability for any resulting damages than to add another shovel-load to a deepening money pit.

### B. *"Notice" Violations*

■ Plaintiffs claim that notification of their franchise's termination was faulty in that it "neither contained nor made any mention of the possible transfer of any property right that [Defendant] could have to the Plaintiff." (Docket No. 2–3 at 15.) Defendant argues that the PMPA did not require it to mention any transfer of property rights in its termination notice (Docket No. 23 at 20). In addition, Defendant states that it did not possess any property right to assign in the land, and any rights to the improvements thereon were not properly requested by Plaintiffs. (*Id.*)

Plaintiffs' vague pleading could refer to either of two different notice provisions in the PMPA. One, § 2802(c)(4)(B), requires the franchisor to offer to assign to the franchisee any option held by the franchisor to extend the underlying lease or to buy the property. The franchisor need not make this offer in the notice of termination, but must make it within ninety days following the notice. *Id.* The second provision is § 2802(c)(4)(C), which requires the franchisor to make a bona-fide offer to sell any improvements or equipment left on the land, following a written request from the franchisee within thirty days' notice of termination.

■ Defendant first argues that, despite the wording of Plaintiffs' complaint, neither of these assignment offers must be made as part of the termination notice; instead, both provisions require franchisor's action during a set period subsequent to the termination notice. (Docket No. 23 at 20.); *See* § 2802(c)(4)(B), (c)(4)(C). Second, Defendant argues that there was no purchase option in the underlying lease that could be assigned to Plaintiffs. (Docket No. 23 at 20.) In support, Defendant submits its original lease with CUDI, which contains no mention of a purchase option. (Docket No. 22–5 at 9–41.) Finally, Defendant states that Plaintiffs never sent it a written request, as required by the § 2802(c)(4)(C), to purchase any equipment or improvements left on the land by Defendant. (Docket No. 23 at 20.) Plaintiffs have failed to respond to any of the above arguments; nor have they "set out specific facts showing a genuine issue for trial" as required by Rule 56(e)(2). (Docket No. 32.) Lacking any challenge to Defendant's arguments that would give rise to a genuine issue of material fact, we find, as a matter of law, that Defendant has not violated either of these PMPA provisions.[1]

---

1. Although Plaintiffs failed to include it in their complaint, they reference an additional claim in their opposition to summary judgment. (Docket No. 32 at 7.) Plaintiffs appear to argue improper notice under § 2802(b)(2)(C), which limits the time frame in which a franchisor could have actual or constructive knowledge of the event that leads to its terminating the franchise. (*Id.*) Generally, courts cannot entertain claims on summary judgment which never appeared in the complaint. *Ruiz Rivera v. Pfizer Pharms., LLC,* 521 F.3d 76, 84 (1st Cir.2008). "The fundamental purpose of our pleadings rules is

## IV.

### *Conclusion*

For the aforementioned reasons, we hereby **GRANT** Defendant's motion for summary judgment (Docket No. 21). We **DISMISS** Plaintiffs' claims under the PMPA (Docket No. 2–3) **WITH PREJUDICE.**

**IT IS SO ORDERED.**

to protect a defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." *Id.* (internal quotations omitted) (affirming summary judgment where claim was not sufficiently pleaded in amended complaint). Plaintiffs' claim was improperly pleaded and, therefore, we shall not consider it.