**Justin H. BRUNGARDT, Plaintiff,**

v.

**AMOCO OIL COMPANY, Defendant.**

**Civ. A. No. 80–2355.**

United States District Court,
D. Kansas.

Jan. 26, 1982.

Howard S. Levitan, Howard S. Levitan, P.C., Prairie Village, Kan., Alan B. Gallas, Berman, DeLeve, Kuchan & Chapman, Kansas City, Mo., for plaintiff.

Roy Bash, William T. Smith, III, Watson, Ess, Marshall & Enggas, Kansas City, Mo., Robert Serra, Kansas City, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter comes before the Court upon the parties' cross-motions for summary judgment. Plaintiff brought this action seeking damages under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.* [hereinafter "PMPA"]. Plaintiff claims that the termination and nonrenewal of his franchise with defendant violated the requirements of 15 U.S.C. § 2802. The Court has reviewed the arguments presented and deems oral argument unnecessary.

Summary judgment may not be granted when a genuine issue of material fact is presented to the trial court. *Exnicious v. United States,* 563 F.2d 418 (10th Cir. 1977). The parties have not disputed that no genuine issues of fact remain. Therefore, the matter is ripe for summary judgment.

The undisputed facts are as follows. The parties entered into a lease agreement, together with certain collateral agreements, on September 12, 1977, covering the lease of a gasoline service station located in Kansas City, Kansas. According to the provisions of the lease, the term was for a period:

"... commencing on the 12th day of September, 1977, and ending on the 29th day of September, 1978. This lease shall automatically renew itself for four (4) subsequent successive terms of one year each; provided, however, the Lessor, upon giving to Lessee written notice of cancellation at least ninety (90) days prior to the effective date of any such cancellation, may cancel this lease as of the expiration date of the initial term of this lease or of any renewal term; and further provided that Lessee may cancel this lease, or any renewal or extension thereof, at any time by giving Lessor at least thirty (30) days' written notice of such cancellation."

Paragraph 16 of the lease stated that "[defendant] is a tenant and not the owner of the above described premises;" that the lease was "subject and subordinate to all ground or underlying leases;" and that "if [defendant's] tenancy ... shall terminate at any time for any reason whatsoever, then in such event, this entire lease shall terminate at the same time...." Defendant's interest in the premises was limited to a leasehold interest as described in the lease and agreement entered into on April 7, 1972, with Alta Investment. (Defendant's Exhibit B.) Defendant notified plaintiff of the lease term of the underlying lease by letter dated January 22, 1979. (Defendant's attachment to opposition to plaintiff's motion.)

Defendant chose not to extend its lease with the fee owner beyond the expiration on September 30, 1979. On April 27, 1979, defendant mailed to plaintiff notice that it would not renew the lease and related agreements with plaintiff beyond the end of the then-current term, September 29, 1979. (Defendant's Exhibit C.)

A brief survey of the PMPA will help in the understanding of the discussion to follow. The PMPA was enacted, in part, to establish minimum federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel by the franchisor or supplier of such fuel. S.Rep.No.95–731, 95th Cong., 2nd Sess. (1978), *reprinted in* U.S.Code Cong. & Adm.News, 873. Title 15, United States Code, § 2802(b)(1) provides that a franchisor may terminate or fail to renew any franchise if:

"(A) the notification requirements of section 2804 of this title are met; and

"(B) such termination is based upon a ground described in paragraph (2) or such nonrenewal is based upon a ground described in paragraph (2) or (3)."

Section 2802(b)(2)(C) defines a ground for either a termination or nonrenewal, which defendant claims is applicable here:

"(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—

"(i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or

"(ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to 2804(b)(1) of this title."

Section 2802(b)(3)(D) defines a ground for nonrenewal, which plaintiff claims controls:

"(D) In the case of any franchise entered into prior to June 19, 1978, (the unexpired term of which, on such date, is 3 years or longer) and, in the case of any franchise entered into or renewed on or after such date (the term of which was 3 years or longer, or with respect to which the franchise was offered a term of 3 years or longer), a determination made by the franchisor in good faith and in the normal course of business, if—

"(i) such determination is—

\*     \*     \*     \*     \*     \*

"(IV) that renewal of the franchise relationship is likely to be uneconomical to the franchisor despite any reasonable changes or reasonable additions to the provisions of the franchise which may be acceptable to the franchisee;

"(ii) with respect to a determination referred to in subclause (II) or (IV), such determination referred is not made for the purpose of converting the leased marketing premises to operation by employees or agents of the franchisor for such franchisor's own account; and

"(iii) in the case of leased marketing premises such franchisor, during the 90-day period after notification was given pursuant to section 2804 of this title, either—

"(I) made a bona fide offer to sell, transfer, or assign to the franchisee such franchisor's interests in such premises; or

"(II) if applicable, offered the franchisee a right of first refusal of at least 45-days duration of an offer, made by another, to purchase such franchisor's interest in such premises."

Section 2802 provides, generally, that 90-day advance notification of termination or nonrenewal be made in writing and posted by certified mail or personally delivered to the franchise.

Plaintiff argues, in support of his motion for summary judgment, that defendant violated the requirements of § 2802(b)(3)(D). Specifically, plaintiff alleges that the lease agreement was terminated because the service was not meeting defendant's profitability requirements. As such, plaintiff surmises, defendant's nonrenewal of plaintiff's franchise was determined because "renewal ... is likely to be uneconomical to the franchisor," a ground defined in § 2802(b)(3)(D)(i)(IV). Under this subsection, the franchisor must make a *bona fide* offer to sell, transfer, or assign to the franchisee such franchisor's interest in the leased premises or offer the franchisee a first right of refusal under certain conditions.

Defendant, however, argues that the termination and nonrenewal were the result of an event which was relevant to the franchise relationship, and as a result the termination or nonrenewal was reasonable, as defined under § 2802(b)(2)(C). Section 2802(c)(4) provides that such an event under (b)(2)(C) includes:

"(4) loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease, if the franchisee was notified in writing, prior to the commencement of the term of the then existing franchise—

"(A) of the duration of the underlying lease, and

"(B) of the fact that such underlying lease might expire and not be renewed during the term of such franchise (in the case of termination) or at the end of such term (in the case of nonrenewal); ..."

Plaintiff argues that subsection (b)(2)(C) is inapplicable because defendant voluntarily terminated its lease with the Alta Investment Company, and, further, defendant failed to notify plaintiff of the duration of

the underlying lease prior to the commencement of the franchise agreement.

■ In *Sachi v. Mobil Oil Corp.,* ¶ 63,044 at 1980–1 *CCH* Trade Cases 77,190 (E.D.N.Y.1979), that court considered arguments similar to those arguments presented by plaintiff herein. That Court rejected both of the plaintiff's contentions that the language of § 2802(b)(3)(D)(i)(IV) should be considered when an underlying lease is terminated, and that a "loss" of the underlying lease is necessarily involuntary, stating:

"The provisions of § 102(c)(4) indicating that the 'loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease' justifies non-renewal or termination must be read independently of the terms contained in other sections of the Act. Sections 102(b)(3)(a) and 102(b)(3)(D)(IV) set forth *additional* grounds for non-renewal. [Cite omitted.] Nothing in the language of the Act or the legislative history indicates that they were intended to be controlling in all instances of termination or non-renewal. Rather, it appears clear that with respect to § 102(c)(4) Congress envisioned a different analysis.

"Expiration of the underlying lease [can] occur under a variety of circumstances including, for example, *a decision by the franchisor not to exercise an option to renew the underlying lease.* However, it is not intended that termination or nonrenewal should be permitted based upon the expiration of a lease which does not evidence the existence of an arms length relationship between the parties and as a result of the expiration of which no substantive change in control of the premises results.

"Sen. Rep. No. [95–731], 95th Cong., 2nd Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News 877, 896 (emphasis added).

"Congress plainly did not intend to restrict the prerogative of the franchisor to exercise legitimate, *independent* business judgment in arriving at a decision not to renew an underlying lease to the franchise premises. If there is an arms-length relationship between the franchisor and the fee owner and a bona fide change in control over the premises, the requirements of the Act have been met. Admittedly, this court might find it a more difficult issue if the franchisor's motivation in failing to exercise the underlying lease were discriminatory, retaliatory or punitive. However, plaintiff has made no such allegation."

1980–1 *CCH* Trade Cases at 77,192. *See also, Bernardini v. Exxon Corp.,* 1980–1 *CCH* Trade Cases ¶ 63,921 at 75,770 (E.D.Pa.1981); *Veracka v. Shell Oil Co., CCH* Bus. Franchise Guide (D.Mass.1980). We find these cases persuasive that the franchisor may voluntarily terminate or fail to renew a lease agreement without meeting the requirements of § 2802(b)(3)(D)(iii).

■ We must next consider plaintiff's argument that defendant's termination of the franchise failed under § 2802(b)(2)(C) because defendant did not give plaintiff notice of the duration of the underlying lease as required by § 2802(c)(4)(A). Here, it is clear that the franchise agreement was entered into prior to June 19, 1978, the effective date of the PMPA. Defendant gave notice that an underlying lease existed, but not its duration at the time the lease agreement was entered. (Paragraph 16 of the lease agreement.) On January 29, 1979, defendant notified plaintiff of the duration of the underlying lease. The courts have been reluctant to apply strict notification requirements upon the franchisor where the franchise agreement and related documents were entered into prior to the enactment of the PMPA. *See Gaspar v. Chevron Oil Co.,* 490 F.Supp. 971 (D.N.J.1980); *Sachi v. Mobil Oil Corp., supra; Frisard v. Texaco Inc.,* 460 F.Supp. 1094 (E.D.La.1978). Here, the facts are not in dispute that notification was received ninety (90) days prior to the nonrenewal. Further, plaintiff knew the underlying lease existed and that, in the event it terminated, defendant could also terminate its agreement with plaintiff. Defendant received statutory notification of the duration of the underlying lease

within a reasonable time after the enactment of the PMPA. Finally, the duration of the underlying lease could not have affected plaintiff's decision to enter into the franchise agreement with defendant. For these reasons, we deem immaterial any failure of strict compliance with § 2802(c)(4).

Accordingly, we find that defendant properly terminated the lease agreement and related documents under the provisions of 15 U.S.C. § 2802(b)(2)(C). Further, we find that the undisputed, material facts establish no ground for a nonrenewal based upon § 2802(b)(3)(D)(i)(IV). Therefore, summary judgment should be granted in favor of defendant.

IT IS BY THE COURT THEREFORE ORDERED that defendant's motion for summary judgment is hereby granted. IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is hereby denied.