Robert **HUTCHENS**, Plaintiff–Appellant,

v.

**ELI ROBERTS OIL COMPANY and American Petrofina Marketing, Inc.,** Defendants–Appellees.

No. 86–3846.

United States Court of Appeals, Eleventh Circuit.

Feb. 29, 1988.

David J. Busch, Tallahassee, Fla., for plaintiff-appellant.

Gary P. Sams, Hopping, Boyd, Green & Sams, Elizabeth C. Bowman, Tallahassee, Fla., for American Petrofina.

Robert McDonald, Roberts, Baggett, La-Face & Richard, Tallahassee, Fla., for Eli Roberts Oil Co.

Before VANCE and HATCHETT, Circuit Judges, and O'KELLEY[*], District Judge.

VANCE, Circuit Judge:

Appellant Robert Hutchens appeals from the district court's judgment for the defendants in his action under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801–2841. We affirm in part and reverse in part.

## I.

In 1973 defendant American Petrofina Marketing, Inc. (now Fina Oil & Chemical Co., hereafter Fina) bought a service station located at 2910 Mahan Drive in Tallahassee, Florida. Fina frequently leases its stations to petroleum jobbers or distributors who in turn lease to retailers, and later in 1973 it entered into a distributor sales contract with defendant Eli Roberts Oil Co. (Roberts Oil). Under this agreement Roberts Oil leased two Tallahassee service stations from Fina, including the one at 2910 Mahan Drive, and supplied a number of other Fina stations in the area as Fina's exclusive distributor.

On January 1, 1974 Roberts Oil subleased the Mahan station to Hutchens. The lease was for a term of one year renewable annually, and provided that either party could terminate the lease at the end of the year on thirty days notice. Hutchens operated the station as a Fina station, and bought Fina gasoline and products from Roberts Oil.

By 1983 Fina had become dissatisfied with the station's sales performance. Although similarly situated stations sold as much as 100,000 gallons of gasoline per month, Hutchens' sales ranged from 9,500

to 12,000 gallons per month. Finally in July 1984 Roberts Oil, at Fina's request, agreed to the cancellation of the underlying lease on the Mahan station effective January 1, 1985. On September 28, 1984 Roberts Oil told Hutchens that because the underlying lease was to be cancelled, it could not renew Hutchen's sublease for 1985. The underlying lease between Fina and Roberts Oil was in fact cancelled, and in June 1985 Fina evicted Hutchens from the premises.

In the meantime Hutchens had brought this action under the PMPA against Roberts Oil and Fina in November 1984. Hutchens' motion for a preliminary injunction was denied, and the matter was tried before the court in July and August of 1986. The district court held that: (1) although there was a franchise relationship between Roberts Oil and Hutchens, the cancellation of the underlying lease was an event that justified the nonrenewal of the relationship under the PMPA; (2) Fina had not violated the PMPA because there was no franchise relationship between it and Hutchens; (3) Fina was entitled to $7,290 on its counterclaim for rent; and (4) Hutchens' claim against Fina was frivolous and Fina was thus entitled to attorneys' fees under 15 U.S.C. § 2805(d)(3). This appeal followed.

## II.

We first consider Hutchens' claim against Roberts Oil. Congress enacted the PMPA in 1978 to address the disparity in bargaining position between fuel suppliers and their franchisees. The Act sets forth the circumstances under which a supplier may terminate or decide not to renew a franchise and imposes certain notice requirements. Roberts Oil concedes that its relationship with Hutchens is a franchise relationship covered by the PMPA. We must therefore decide whether Roberts Oil's decision not to renew Hutchens' lease was made in conformity with the PMPA. Hutchens contends that it was not. He

[*] Honorable William C. O'Kelley, U.S. District Judge for the Northern District of Georgia, sitting by designation.

argues that Roberts Oil failed to establish a legitimate ground for nonrenewal under the PMPA and that it failed to comply with the Act's notice requirements.

### A.

■ As its justification for failing to renew Hutchen's lease Roberts Oil relies on 15 U.S.C. § 2802(b)(2)(C). That section allows a franchisor to terminate or fail to renew a franchise upon:

The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable....

Congress has defined such events to include:

loss of the franchisor's right to grant possession of the leased marketing premises through expiration of an underlying lease....

15 U.S.C. § 2802(c)(4). Roberts Oil contends that the cancellation of its lease with Fina fits squarely within section 2802(c)(4) and was therefore an event that justified nonrenewal under section 2802(b)(2)(C). Hutchens on the other hand argues that a franchisor's voluntary cancellation of its underlying lease cannot constitute "[t]he occurrence of an event" under section 2802(b)(2)(C). To hold otherwise, he argues, would render the remedial purpose of the PMPA nugatory.

This court has not addressed the question of whether section 2802(c)(4) encompasses a franchisor's voluntary relinquishment of its lease. The courts of appeals that have addressed the issue, however, are unanimous in their conclusion that it does. For instance in Veracka v. Shell Oil Co., 655 F.2d 445 (1st Cir.1981), the franchisor had taken affirmative steps to stop the otherwise automatic extension of its underlying lease. As a result, the franchisee's sublease could not be renewed. In the franchisee's action under the PMPA the franchisor, relying on section 2802(c)(4), argued that the loss of its underlying lease was an event that justified nonrenewal under section 2802(b)(2)(C). The court agreed, rejecting the franchisee's argu-

ment that section 2802(c)(4) is applicable only when the loss of the lease is outside the franchisor's control. Id. at 448. The court stated:

We do not accept this argument, for it fits neither the Act's language nor its purposes as revealed by its legislative history. The Act itself refers to "expiration" of the lease, without reference to the expiration's cause.

Id.; see also Lugar v. Texaco, Inc., 755 F.2d 53, 56–57 (3d Cir.1985) (section 2802(c)(4) encompasses franchisor's voluntary decision not to renew underlying lease); Zarcone v. Amerada Hess Corp., 661 F.Supp. 615, 617 (E.D.N.Y.1987) (same); cf. Russo v. Texaco, Inc., 808 F.2d 221, 227 (2d Cir.1986) (citing Veracka in support of its conclusion that section 2802(c)(6) encompasses a voluntary loss of the right to grant the use of a trademark).

We find Veracka persuasive and hold that section 2802(c)(4) encompasses a franchisor's voluntary relinquishment of its lease. As the First Circuit noted in Veracka, section 2802(c)(4) makes no reference to the cause of the underlying lease's termination. Indeed, the legislative history suggests that Congress intended to include voluntary terminations within the scope of section 2802(c)(4). According to the Senate Report:

Expiration of the underlying lease could occur under a variety of circumstances including, for example, a decision by the franchisor not to exercise an option to renew the underlying lease. However, it is not intended that termination or nonrenewal should be permitted based upon the expiration of a lease which does not evidence the existence of an arms length relationship between the parties and as a result of the expiration of which no substantive change in control of the premises results.

S.Rep. No. 731, 95th Cong., 2d Sess. 38, reprinted in 1978 U.S.Code Cong. & Admin.News 873, 896. Thus, in deciding whether the termination of a franchisor's underlying lease falls within section 2802(c)(4) the cause of the lease's termination is not determinative. Rather, we

must be satisfied that the termination represents an arms length transaction in which the franchisor actually gives up control of the premises. *See Hifai v. Shell Oil Co.,* 704 F.2d 1425, 1429 (9th Cir.1983); *Veracka,* 655 F.2d at 448.

Here the record clearly establishes that Roberts Oil relinquished all control over the premises upon the cancellation of its lease on January 1, 1985. This is not a case in which a franchisor has maintained control somehow over the premises in an attempt to capitalize on the departed franchisee's goodwill. We thus agree with the district court's conclusion that the cancellation of the underlying lease between Fina and Roberts Oil was an event that justified the nonrenewal of Hutchens' sublease under 15 U.S.C. § 2802(b)(2)(C).[1]

### B.

■ Having found that Roberts Oil's decision not to renew Hutchens' sublease was justified under the PMPA, we must decide whether Roberts Oil satisfied the Act's notice requirements. This case involves three separate notice requirements. In addition to the general notice requirement of section 2804, both section 2802(b)(2)(C) and section 2802(c)(4) contain notice provisions that must be satisfied by franchisors that rely on those sections to justify termination or nonrenewal.

Hutchens does not challenge Roberts Oil's compliance with the notice provisions of section 2804. He argues, however, that Roberts Oil failed to meet the notice requirements of both section 2802(b)(2)(C) and section 2802(c)(4). The district court found that the notice requirement of section 2802(c)(4) supplanted that of section 2802(b)(2)(C), and that therefore section 2802(b)(2)(C) did not apply.[2] It further

found that the notice requirement of 2802(c)(4) had been materially satisfied.

A franchisor that seeks to justify its nonrenewal of a franchise based on the occurrence of an event within the meaning of section 2802(b)(2)(C) must have acquired knowledge of the event:

> not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title.

15 U.S.C. § 2802(b)(2)(C)(i). Several courts, however, have held that franchisors relying on the event described in section 2802(c)(4) need not satisfy this notice requirement. Section 2802(c)(4) contains its own notice provisions, and these courts have held that the specific notice requirements of section 2802(c)(4) were intended to supplant the more general provisions of section 2802(b)(2)(C). *See, e.g., Veracka,* 655 F.2d at 449–50; *Gaspar v. Chevron Oil Co.,* 490 F.Supp. 971, 975 (D.N.J.1980). We need not address this issue, however, because Roberts Oil clearly has satisfied the notice requirement of section 2802(b)(2)(C)(i). The agreement between Fina and Roberts Oil to cancel the base lease was executed on July 31, 1984. Roberts Oil gave Hutchens the notice required by section 2804(a) on September 28, 1984, well within the 120 day limit of section 2802(b)(2)(C)(i).

Hutchens also contends that Roberts Oil failed to comply with the notice provisions of section 2802(c)(4). A franchisor can rely on section 2802(c)(4) to justify nonrenewal only if:

> the franchisee was notified in writing, prior to the commencement of the term of the then existing franchise—

---

1. Hutchens contends that *Veracka* and the line of cases following it are distinguishable in that they involve the expiration rather than the cancellation of an underlying lease. He argues that although a franchisor's decision to allow its underlying lease to expire may be an event that justifies nonrenewal of a franchise, its decision to cancel the lease in the middle of its term is not. We disagree. The distinction Hutchens urges is arbitrary and finds no support in the purpose or legislative history of the PMPA. As

long as the franchisor's decision to relinquish its lease is an arms length transaction in which it actually gives up control over the premises, it makes no difference whether the relinquishment is accomplished through cancellation of the lease or a decision not to renew it.

2. In the alternative the court found that Roberts Oil had complied with the notice provision of section 2802(b)(2)(C).

(A) of the duration of the underlying lease, and

(B) of the fact that such underlying lease might expire and not be renewed during the term of such franchise (in the case of termination) or at the end of the term (in the case of nonrenewal).

The district court found that these requirements had been materially satisfied.

■ There can be little dispute that Roberts Oil satisfied the notice requirement of section 2802(c)(4)(B). Hutchens was fully aware that Fina owned the premises, and the lease between Hutchens and Roberts Oil clearly states that it expires upon the termination of Roberts Oil's underlying lease.[3] The notice requirement of section 2802(c)(4)(A) is another matter. Roberts Oil concedes that it failed to give Hutchens written notice of the term of the underlying lease. The district court nonetheless found this failure immaterial in light of Hutchens' testimony that the term of the base lease made no difference to him and that he had made no effort to discover it.

This is not the first time a court has had to decide the effect of a franchisor's failure to comply strictly with the notice provisions of section 2802(c)(4). For instance in *Brungardt v. Amoco Oil Co.*, 530 F.Supp. 744 (D.Kan.1982), the franchisor had not given the franchisee notice of the duration of the underlying lease. The court, however, termed this failure "immaterial." *Id.* at 748. It noted that the parties entered into the franchise agreement prior to the enactment of the PMPA, that the franchisee knew of the underlying lease and that it could be terminated, and that the term of the lease would not have affected the franchisee's decision to enter into the franchise agreement. *Id.* at 747–48; *see also Gaspar*, 490 F.Supp. at 974–75 (refusing to apply strictly the notice requirement of section 2802(c)(4)(A)).

We agree with the district court's decision not to demand strict compliance with the notice provisions of section 2802(c)(4). This approach permits courts to "go beyond form and examine the true substance of the matter." *Brown v. American Petrofina Mktg., Inc.*, 555 F.Supp. 1327, 1335 (M.D.Fla.1983), *aff'd*, 733 F.2d 906 (11th Cir.1984). It allows them to "determine whether plaintiffs were actually aware of the information which Congress required they have under section 2802(c)(4) and whether they were prejudiced by not having the notice in writing." *Id.* Here Hutchens and Roberts Oil entered into the franchise agreement in 1974, long before the PMPA's enactment. Hutchens was aware of the base lease and of the fact that it could be terminated. Hutchens testified that he saw a copy of the base lease in March or April of 1983. He further testified that he never asked Roberts Oil about the term of the base lease and that the length of the term would have made no difference to him. Under these circumstances we agree with the district court's conclusion that Roberts Oil had materially satisfied the notice provisions of section 2802(c)(4). We therefore affirm the court's holding that Roberts Oil complied with the PMPA in deciding not to renew Hutchens' lease.

### III.

We now turn to Hutchens' claim against Fina. The district court found the PMPA inapplicable to the relationship between Hutchens and Fina because of the absence of a franchise agreement between them.[4] *See, e.g., Rogue Valley Stations, Inc. v. Birk Oil Co., Inc.*, 568 F.Supp. 337, 344–45 (D.Or.1983) (lack of contractual relationship precludes liability under the PMPA); *Brown*, 555 F.Supp. at 1331–32 (same). Although Hutchens acknowledges the general rule that the PMPA is inapplicable in the

---

**3.** The lease between Hutchens and Roberts Oil provides that it shall end "not later than one day before the expiration of Lessor's underlying lease, if any." Paragraph 23 of the lease further provides:

If the above described station is held by Lessor under lease ... and if such underlying lease shall be terminated for any cause or in any manner at any time prior to the expiration of the term herein provided, this lease, at the same time, shall expire and terminate....

**4.** It is undisputed that Hutchens and Fina never entered into a contractual relationship.

absence of a contractual relationship, he seeks to hold Fina liable under the Act on two theories. First, he argues that because Roberts Oil had to obtain Fina's permission to sublease the station, Fina was Hutchens' franchisor under the PMPA.[5] Second, he argues that Fina is liable under the PMPA because it conspired with Roberts Oil to violate Hutchens' rights under the Act.

■ Hutchens' first argument is a novel one. He argues that Fina actually controlled who would occupy the premises as a retailer and was therefore Hutchens' franchisor under the PMPA. Although he can find no case law to support this argument Hutchens directs our attention to the language of the Act. Section 2801(3) reads:

> The term "franchisor" means a refiner or distributor (as the case may be) who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel.

Hutchens reasons that Fina had "authorized" Hutchens to use its trademark in connection with the sale of gasoline and was thus his franchisor under section 2801(3).

Hutchens makes the same argument with respect to the Act's definition of the term "franchisee." Section 2801(4) reads:

> The term "franchisee" means a retailer or distributor (as the case may be) who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel.

Under this theory Fina "authorized" Hutchens to sell its gasoline, and thus Hutchens was Fina's franchisee under section 2801(4). In essence, Hutchens contends that the PMPA governs the relationship between a refiner and a retailer in a three party distribution chain if the refiner maintains control over its distributor's right to sublease its station. He argues that in these situations it is the refiner rather than the distributor that is awarding the retailer the franchise and that the refiner and retailer thus have a franchise relationship under the PMPA.

■ It is easy to understand why Hutchens can find no case law in support of his theory. It is clear that under the PMPA a franchise is viewed as a direct contractual relationship. Section 2801(1) reads:

> (A) The term "franchise" means *any contract—*
>
> > (i) between a refiner and a distributor.
> >
> > (ii) between a refiner and a retailer,
> >
> > (iii) between a distributor and another distributor, or
> >
> > (iv) between a distributor and a retailer,
>
> under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use ... a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.
>
> (B) The term "franchise" includes—
>
> > (i) *any contract* under which a retailer or distributor (as the case may be) is authorized or permitted to occupy leased marketing premises....
> >
> > (ii) *any contract* pertaining to the supply of motor fuel....
> >
> > (iii) the unexpired portion of any franchise, as defined by the preceding provisions of this paragraph....

(emphasis added). The provisions cited by Hutchens limit the definitions of the terms "franchisor" and "franchisee" to those situations in which the right to market fuel under the refiner's trademark is granted "under a franchise." 15 U.S.C. § 2801(3), (4). We agree with every court that has considered the question and hold that there can be no franchise relationship under the PMPA in the absence of some direct contractual relationship. *See, e.g., Rogue Valley*, 568 F.Supp. at 344–45; *Brown*, 555 F.Supp. at 1331–32. It is simply not

---

5. The base lease between Fina and Roberts Oil provided that Roberts Oil could not sublet the premises without Fina's written consent.

enough to establish a franchise relationship between a refiner and a retailer that a lease between the refiner and its distributor contains boilerplate language that requires the distributor to obtain the refiner's consent before subleasing the premises.

Hutchens also contends that Fina and Roberts Oil conspired to violate his rights under the PMPA. Several courts have suggested that retailers may have an action under the PMPA against refiners with whom they have no contract if the relationship between the refiner and its distributor is less than arm's length. *See Abadjian v. Gulf Oil Corp.*, 602 F.Supp. 874, 881 (C.D. Cal.1984); *Bsales v. Texaco, Inc.*, 516 F.Supp. 655, 661–62 (D.N.J.1981). The district court, however, found that Hutchens had failed to prove his allegation of a conspiracy and thus the court did not decide whether such a showing of improper conduct gives a retailer an action under the PMPA against a refiner with which it has no contract. Because we conclude that the district court's finding of no conspiracy is not clearly erroneous, we likewise do not decide the issue.

■ The record fully supports the district court's finding that the cancellation of the base lease was an arm's length transaction in which both Fina and Roberts Oil acted for legitimate business reasons. The station was not generating the sales volume that Fina expected, and Roberts Oil was more than willing to give up an unproductive station in order to maintain its good business relationship with Fina. As we have noted this is not a case in which a franchisor used the cancellation of a base lease as a ruse to rid itself of an unwanted franchisee only to later conspire with the lessor to regain control of the premises. Roberts Oil simply decided to give up its interest in the station, and the fact that it and Fina were acting in their own best interest is not of controlling importance. *See Bsales*, 516 F.Supp. at 663. Because Hutchens has failed to establish that the

PMPA governs his relationship with Fina, the district court's judgment for Fina on the merits of Hutchens' PMPA claim is affirmed.

### IV.

Hutchens does not contest the district court's award of rent and that part of the district court's judgment is therefore affirmed. We conclude, however, that the district court erred when it awarded Fina attorneys' fees under section 2805(d)(3). Although Hutchens did not prevail on his argument concerning Fina's power to control subleasing, the contention was not frivolous. In addition, his conspiracy claim, if proven, might have entitled him to relief. We therefore reverse the district court's award of attorney fees in favor of Fina.[6]

AFFIRMED in part, REVERSED in part.

---

6. Hutchens also contends that the district court erred by not admitting in evidence certain hearsay testimony and by denying his belated request for a jury trial. With respect to both contentions he has failed to demonstrate reversible error.